# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| MONTAGE FURNITURE SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>REGENCY FURNITURE, INC. *et al.*,<br><br>Defendants. | Civil Action No. 8:12-cv-03365-AW |

## MEMORANDUM OPINION

Pending before the Court are (1) Defendants' Motion for Summary Judgment and (2) Plaintiff's Cross-Motion for Summary Judgment. The Court has carefully reviewed the record and deems a hearing unnecessary. For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Montage Furniture Services, LLC supplies furniture protection plans to furniture retailers. Defendants are a group of furniture stores that operate under the names of Regency Furniture and Ashley Furniture Industries.

Plaintiff filed a Complaint sounding in breach of contract in Civil Action 8:11-cv-00453-AW (D. Md. 2011). In that case, Plaintiff alleged that Defendants contracted with it to buy furniture protection plans that, in turn, they sold to customers who bought furniture from their stores. Plaintiff further alleged that Defendants would sell customers furniture protection plans without giving the customers physical copies of the plans. Plaintiff added that this practice

1

enabled Defendants to sell the same plan to multiple customers, thereby depriving Plaintiff of the benefit of the Parties' alleged bargain. Defendants moved for summary judgment in that case.

While Defendants' motion for summary judgment pended in that case, the Parties engaged in settlement negotiations. On January 23, 2012, Plaintiff's president, Alan Salmon, sent an email to Defendant Regency Furniture, Inc.'s president, Abdul Ayyad.[1] In this email, Plaintiff characterizes Defendants' prior settlement proposal as "inadequate" and, in response, sets forth a six-point counterproposal. In the counterproposal's own language, these points included: (1) liability in plans sold for which Plaintiff was never paid; (2) compensation for costs incurred and to be incurred; (3) compensation for lost revenue and profits; (4) recovery of legal costs; (5) supply agreement & pricing; and (6) a letter of credit. *See* Doc. No. 18-2.

On the following day, Defendants responded to the counterproposal via email. Defendants stated that they were "willing to consider" an agreement by which they would purchase "X" number of furniture plans for $37 each. *See* Doc. No. 18-4. The January 24, 2012 email further states, "If we can reach [an] agreement on 'x,' we can both focus on making this arrangement profitable for both of us." *Id.*

The Parties' negotiations continued in an email dated February 9, 2012. In this email, Defendants rejected a prior proposal to purchase 55,000 plans at $37 per plan and suggested that they might be willing to buy 10,800 plans for $37. *See* Doc. No. 17-4.

The Parties engaged in back-and-forth email communications between March 9, 2012 and March 11, 2012. *See* Doc. No. 17-5. These negotiations culminated with Defendants making the following offer: "The settlement offer on the table is appx. 50% [i.e., 10,800] of the 21,000

---

[1] Unless otherwise noted, the Court hereinafter refers to Salmon as "Plaintiff" and Ayyad as "Defendants."

plans. That is a generous offer . . . . Please advise your client that the settlement offer will be withdrawn if not accepted by March 16 . . . ." *Id.* at 2.

On March 14, 2012, Plaintiff responded to Defendants' settlement offer via email. In pertinent part, the email states as follows: "[Plaintiff] . . . will accept your offer to resolve this matter. [Plaintiff] agree[s] to settle **on the terms contained in [Plaintiff's prior counterproposal] to [Defendants]**, except that rather than requiring [Defendants] to purchase 55,000 plans, we will agree to the 10,800 plans as reflected in your offer." *See* Doc. No. 17-6 (emphasis added).

In late April 2012, the Parties exchanged a draft settlement agreement. The draft agreement states that it is "effective as of the date of the last signature of the Parties . . . ." Doc. No. 18-7 at 1. On May 3, 2012, the Court granted Defendants' motion for summary judgment in the prior action.[2] Thereafter, Defendants disputed that the Parties had reached a binding settlement agreement. Likewise, there is no evidence that either Party signed the draft settlement agreement.

Against this backdrop, Plaintiff filed a Complaint on November 16, 2012. Doc. No. 1. In its Complaint, Plaintiff asserts a single claim for "breach of settlement agreement." *Id.* at 5. The case went into discovery. On April 23, 2013, Defendants filed a Motion for Summary Judgment. Doc. No. 13. Defendants generally argue that the Parties never formed a binding settlement agreement, whether oral or written. On May 10, 2013, Plaintiff filed a combined Opposition and Cross-Motion for Summary Judgment (Cross-Motion for Summary Judgment). Doc. No. 17.[3]

---

[2] The Fourth Circuit affirmed this Court's order on January 4, 2013.

[3] Defendant requests the Court to strike Defendants' Cross-Motion for Summary Judgment for being untimely. The Court denies this request. First, Plaintiff's request is cursory. *See* Fed. R. Civ. P. 7(b) (requiring motions to "state with particularity the grounds" for relief). Second, courts have discretion to disregard arguments made in footnotes. *Cf. United States v. Restrepo*, 986 F.2d 1462, 1463 (2nd Cir.

Plaintiff generally argues that the Parties consummated an oral settlement agreement whereby Defendants would purchase 10,800 plans at $37 per plan. The Parties have fully briefed the outstanding cross-motions for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal*

---

1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."). Third, Plaintiff has identified no prejudice that would result from the Court's consideration of Defendants' Cross-Motion for Summary Judgment, except perhaps the prejudice that litigants faced with meritorious dispositive motions invariably incur. *Cf. Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999) (emphasis added) (citing cases) ("[A]bsent **unfair** . . . **prejudice** to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion . . . .").

*v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III. LEGAL ANALYIS

### A. Choice of Law

The Parties did not address the question of what law to apply to Plaintiff's breach of settlement claim. The jurisdictional basis of this case is diversity. "A federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). "Maryland generally follows the lex loci contractus principle, under which the law of the jurisdiction where the contract was made controls its validity and construction." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (citation and internal quotation marks omitted). "In deciding questions of interpretation and validity of contract provisions, Maryland courts ordinarily should apply the law of the jurisdiction where the contract was made." *Speechly Bircham, LLP v. Miller*, Civil Action No. 8:10–cv–03041–AW, 2012 WL 4341574, at *3 (D. Md. Sep. 20, 2012) (citation and internal quotation marks omitted). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Blanch v. Chubb & Son, Inc.*, Civil No. CCB–12–1965, 2013 WL 4026919, at *2 (D. Md. Aug. 6, 2013) (citation and internal quotation marks omitted).

Preliminarily, it is unclear that the Parties reached a binding agreement. Thus, the Court must consider what law it should apply under the lex loci contractus principle where the existence of a contract is uncertain. The Parties apply a mix of Maryland and federal law. Yet Plaintiff evidently sent the email that Plaintiff contends constitutes acceptance of the offer from Michigan. *See* Doc. No. 17-6. Therefore, the Court must address whether Michigan law applies to Plaintiff's breach of settlement claim.

Under Michigan law, where the Parties fail to choose what state law governs their dispute, "the Court must apply Michigan law unless a rational reason for doing otherwise exists." *R & D Distrib. Corp. v. Health-Mor Indus., Inc.*, 118 F. Supp. 2d 806, 808 (E.D. Mich. 2000) (citation omitted). In this case, it would be irrational to apply Michigan law because the focus of the dispute is Maryland. Defendants are Maryland corporations that a Maryland attorney represents. Furthermore, although Plaintiff is a Delaware corporation located in Minnesota, Plaintiff's attorneys of record are located in Maryland. Additionally, the dispute in the prior case centered on Defendants' business operations, which are in Maryland. In short, out-of-state counsel's one-time email communication purporting to accept Defendants' settlement offer does not supply a rational basis to apply Michigan law.

For the same basic reasons, Maryland law would apply even if Plaintiff's March 14 email constituted acceptance of Defendants' offer. Maryland recognizes a limited "renvoi" exception to the lex loci contractus principle. Under the renvoi exception,

> Maryland courts should apply Maryland substantive law to contracts entered into in foreign states' jurisdictions in spite of the doctrine of lex loci contractus when:
>
> 1) Maryland has the most significant relationship, or, at least, a substantial relationship with respect to the contract issue presented; and

2) The state where the contract was entered into would not apply its own substantive law, but instead would apply Maryland substantive law to the issue before the court.

*Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 659 A.2d 1295, 1304–05 (Md. 1995).

In this case, as noted, Maryland has the most significant relationship to the alleged contract. Likewise, as explained, Michigan would not apply its own substantive law because there is no rational reason to do so under the facts of this case. Accordingly, the Court applies Maryland law to the dispute.[4]

**B.     Defendants' Motion for Summary Judgment**

The first task in an action for breach of a purported settlement agreement is to ascertain "whether the parties have in fact agreed to settle the case." *Moore v. Beaufort County, N.C.*, 936 F.2d 159, 162 (4th Cir. 1991); *accord Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 541 (4th Cir. 2002). "[S]ettlement agreements . . . are subject to interpretation in light of the settled and oft-repeated principles of objective construction." *Goldberg v. Goldberg*, 428 A.2d 469, 474–75 (Md. 1981) (citation omitted); *accord Maslow v. Vanguri*, 896 A.2d 408, 419 (Md. Ct. Spec. App. 2006) (citing cases). Under Maryland law, "[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (citation omitted). It is well-established that Maryland law requires unqualified acceptance of the offer for the purported acceptance to be effective. *See, e.g.*, *Fraley v. Null, Inc.*, 224 A.2d 448, 451–52 (Md. 1966) (citation omitted); *Post v. Gillespie*, 149 A.2d 391, 396 (Md. 1959) (collecting authority); *accord Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 543 (4th Cir. 1987)

---

[4] The Court recognizes that the question whether to enforce a settlement agreement may implicate federal law where the agreement was entered into in settlement of litigation before the district court. *See Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983) (citations omitted).

7

(citations omitted). The corollary of this rule is that conditional acceptance turns a purported acceptance into a counteroffer. *See, e.g.*, *L & L Corp. v. Ammendale Normal Inst.*, 236 A.2d 734, 736–37 (Md. 1968). Conditional acceptance destroys the mutual assent necessary for contractual formation. *See Safeway Stores, Inc. v. Altman*, 463 A.2d 829, 831 (4th Cir. 1983) (citing *Ammendale*, 236 A.2d at 736); *see also Ozyagcilar*, 701 F.2d at 308 (citation omitted) ("[T]he district court . . . does not have the power to impose . . . a settlement agreement where there was never a meeting of the parties' minds.").

In this case, a reasonable fact-finder could only conclude that Plaintiff's purported acceptance was a counteroffer. Although a reasonable fact-finder could conclude that Defendants offered to purchase 10,800 plans at $37 per plan, Plaintiff unequivocally conditioned its acceptance of this offer on the terms contained in Plaintiff's six-point counterproposal to Defendants. *See* Doc. No. 17-6. As laid out above, the terms of Plaintiff's counterproposal included six significant points of contention. Because Plaintiff qualified its acceptance of the offer on Defendants' acceptance of all these other terms, a reasonable fact-finder could only conclude that Plaintiff's purported acceptance was a counteroffer. There is no evidence that Defendants ever accepted the counteroffer. Thus, the Parties never actually agreed to settle the case and there is no binding settlement agreement to enforce.

Plaintiff's counterarguments lack merit. Plaintiff's central contention appears to be that all the terms of the six-point counterproposal had been incorporated into Defendants' offer. In this way, Plaintiff's purported acceptance could not have acted as a counteroffer because the allegedly new terms were already present in Defendants' offer. But there is no evidentiary basis for this argument. The Parties' email communications clearly show that the Parties were engaged in preliminary negotiations until Defendants made the offer to purchase 10,800 plans for $37

apiece. Furthermore, Defendants' offer neither expressly nor impliedly incorporates the terms of Plaintiff's six-point counterproposal. To the extent Plaintiff suggests otherwise, its suggestion is, at best, strained. Plaintiff also seems to suggest that the Court should hold an evidentiary hearing on whether the Parties formed a settlement agreement in light of the affidavit of Plaintiff's president, Mr. Salmon. *See generally Hensley*, 277 F.3d at 541 (stating that district courts should conduct a plenary evidentiary hearing before summarily enforcing a settlement agreement where, unlike here, there are meaningful factual disputes over the existence of the agreement). This argument fails because Salmon's affidavit is a scant document whose somewhat self-serving declarations and legal conclusions fly in the face of the Parties' email communications. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous . . . statement . . . . without explaining the contradiction or attempting to resolve the disparity."). Furthermore, although Plaintiff does not argue that the draft settlement agreement binds Defendants, this argument would fail because the draft agreement expressly requires the signatures of both Parties to be effective. *See Griffith v. Scheungrab*, 146 A.2d 864, 868 (Md. 1958) (citations omitted); *cf. Porter v. Gen. Boiler Casing Co., Inc.*, 396 A.2d 1090, 1095 (Md. 1979) (citation omitted).

C.    **Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff's Cross-Motion for Summary Judgment fails for the reasons stated in Part III.B.

9

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment. A separate Order closing the case with prejudice follows.

| | |
|---|---|
| September 4, 2013 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |